May it please the Court, Counsel. My name is Nathaniel Green, and I represent the petitioner Burite Burka in this matter. This case involves an asylum applicant who meets every substantive criterion for asylum. The only issue in this case is whether she meets an exception to the one-year statutory bar before filing an asylum claim. The immigration judge wrongly held and the board wrongly affirmed that the material worsening of an existing fear did not meet the changed circumstances exception. This court is jurisdictional over the issue here because it is a question of law, not a question of fact. And the material worsening of an existing- Did the immigration judge, and by virtue of the review of the Board of Immigration Appeals, did they hold that as a matter of law, or was this sort of a quasi-materiality ruling? Which is, if you read the IJ's opinion, it says that there aren't changed circumstances that give rise to excuse the failure. And I'm paraphrasing here, excuse the failure to file. Yeah, that's a good question. I would say that the board's opinion is not a model of clarity. They seem to confuse the changed and extraordinary circumstances exception at one point. Though we're not disputing the extraordinary circumstances exception here. It does seem to suggest that they may have been confused. The judge's decision, which is in sort of the greatest detail here, at the end of page nine, page seven of her decision, suggests that the issue here is that when there's a material worsening of an existing fear that that cannot constitute changed circumstances. I would point to kind of the rest of the immigration judge's opinion, which is quite well cited. There's quite thorough citation on all points except this one here. What would you make of the, this is on addendum, I believe it's addendum nine. It's the IJ's opinion where the IJ says, therefore, these fears do not contain a change in respondent's circumstance. That would legally excuse her filing delay. That, to me, is sort of the key, and then there's some factual detail before that. That's sort of the key passage. I just don't know exactly what that means, and I think it could be read either as a materiality holding or it could be held, a plausible reading of it is the reading you give too, and what do we do with that? Yeah, that's a great question, your honor. I would point to the therefore, specifically in that sentence that seems to suggest, as lawyers tend to talk, that that's a legal conclusion, not a factual one. There's a couple of other points in the record that suggest that the judge was looking at it from a legal question standpoint rather than a factual one. There is in the addendum, I believe it's page 18, there is some of the testimony from the hearing, and it's the judge talking about how she's not sure about this particular point. And she says, it seems like it's another thing added on to fear she would already had, that's a direct quote, and not a new fear. Additionally, the judge held the record open for the submission of a brief by Petitioner's Trial Counsel. That brief is in the administrative record at 220 through 224. That brief addresses the legal issues. But I could ask you a question at this point, which I think is relevant to what you're saying. That is, do we have jurisdiction over this case? That's a good question, your honor. Do we have jurisdiction over this case? Yes, yes, you do. This issue, or I'm sorry, the Board of Immigration Appeals decision dismissed the appeal and remanded it only for background checks specifically. The asylum application is effectively dead at that point. And so that's a final order. But no, but I mean, why is this a question of law? I see. It's a question of law because it deals with the change circumstances exception. There is- I think on the face of it, you've got a good argument there. But I'm wondering, there's a case that we have, Kambara, Kambara against Leach, which is 837 F3rd 822, do you know that case? I don't specifically, your honor. I think it may be a difficulty in a way of our jurisdiction in this case. So I thought maybe you'd have something to say about it. But we'll work it through. Yeah, and I'm happy to submit a supplemental filing on that particular case. I'd like that if that's okay. It's fine. Okay. Please do so. The question of law here is a question of statutory and regulatory interpretation. It's what can constitute change circumstances, not whether the petitioner was able to provide that evidence. By way of clarification, and I don't mean to interrupt again, but I guess I have to make this point. I think that your argument that we have jurisdiction is a good one in the abstract. And indeed, I think most of the circuits, all the ones that I've been able to find cases from, agree with you. But I'm just a little bit concerned about this one case of ours, which if it says what I think it says, of course, we're bound to follow it. So it may be a difficulty for you. Sure, without getting into the details of that case, subject of course to the supplemental filing, petitioner contends that a changed circumstances exception by its very nature in the use of the word changed, rather than new, suggests that the material worsening of an existing fear can constitute. And of course, that's not a bright line requirement, but it's something that can be considered. And in this case, the immigration judge and then the board in affirming the immigration judge's decision, considered that to not be the case. That constitutes- Council, there's another case that, and I apologize for interrupting, but while Judge Arnold was asked, it's the Gormuk case, which is briefed. And I hope you're familiar with that. Yes, yes, I am familiar with that. And we have really broad language in that one, where we're talking about change in circumstances. For instance, the way we articulate the standard under the statutory framework, the decision whether such changed circumstance exists is a discretionary judgment of the attorney general. And then Judge Murphy's dissent, which actually does not help your case here, where she says that what the majority does is because it's a mixed question of law and fact, she says. The way she characterized the majority, the majority says there's no jurisdiction. And it seems to me that the same thing applies here, that this is at best a mixed question of law and fact. Judge Arnold was saying, there could be a question of law tied up in here, but there's certainly a question of fact, which is whether these facts you have asserted, whether these facts you have alleged, are a changed circumstance. And that is tied up in the legal question. So what on earth do we do with Gormuk? It is certainly a question of distinguishing Gormuk, if the petitioner is to prevail here, I would point to a couple of things. One, there are actually two issues in Gormuk. There was a changed circumstances exception, and then there was the question of whether the immigration judge and the board commingled, as to some extent the board's decision does here, the change in extraordinary circumstances exception. This court said that you have jurisdiction to review that particular issue because it's a question of law. It's a statutory interpretation issue. Here, the question is, what can the judge consider in examining the changed circumstances exception? The judge here said, I can't consider anything that's a material worsening of an existing fear. If there's a new fear, she said, then I can. But if it's a material worsening of an existing fear, then I can't. That's a statutory interpretation issue, because the changed circumstances exception, it lists some non-exhaustive criteria to be examined when you're looking at that particular issue. And so because of that, we're looking at a question of statutory interpretation alone. But you don't think that's analogous to the materiality question that we were addressing? I mean, if you read the IJ's decision as sort of a quasi-materiality finding, then you're directly under Goremu, and that is particularly that last line of the opinion. Yeah, I think the distinguishing factor here is the judge's posture in deciding the case. So it's her initial statements at one of the master calendar hearings, which, as I read earlier, seems to suggest that she didn't think she could do it. The briefing that she left open and then was submitted by trial counsel that addressed that particular issue on a legal basis, not a factual one primarily, and then the language of the decision itself. It's also, I should say, reflected in petitioner's request not to outright decide that changed circumstances exist here, but instead remand the case to the immigration judge for reconsideration under the appropriate standard. So the question of whether this is purely law, as petitioner contends it is, or if it's some sort of mixed question, I think is reflected in that particular point as well. In addition to some of the cases that have been discussed already, other circuits have addressed this particular point and found both jurisdiction and that it's a question of law that can be reviewed and should be resolved in the favor of petitioner. I won't read them all, but of course Fakhri, Singh and Vohora from the Ninth Circuit, Zhi from the Second, and Mandabu from the Sixth Circuit, all addressed these particular points. Fakhri in particular pointed to the issue of the changed circumstances exception. The point of it, as Congress intended, was to assist or excuse those who filed late because they had, quote, weak or non-existent asylum claims prior to that point. It would contravene the purpose of the statute to interpret changed circumstances to exclude existing fears because the purpose of the exception in the first place is to permit late filers to bring asylum claims based on that. And I see I'm into rebuttal time, so unless there's any particular questions on that point, I'll reserve. Thank you. Mr. Stewart. Thank you, Your Honor. May it please the Court, I'm Scott Stewart on behalf of the Attorney General. In this case, the immigration judge found that petitioner Berit Berka failed to demonstrate changed circumstances that would excuse her late asylum application. This Court lacks jurisdiction to review that discretionary factual determination. The petition should be dismissed. I think the point of emphasis here, Your Honor, is that unlike cases where this Court or other courts have found jurisdiction in sort of analogous situations, is that the immigration judge here found that the petitioner's new fact, the new fact that the petitioner cited, was just not sufficient to meet the materiality threshold. I think a number of features highlighted in the immigration judge's opinion bear out that this was a materiality determination of discretion, which is a discretionary factual determination rather than a legal determination. First, the immigration judge found it very significant that the facts were very, really quite stark and quite bad that petitioner faced before she arrived in the United States. She'd been subjected to female genital mutilation. She'd been detained for three months. She'd been raped, beaten, and kicked. It sounds quite continually according to her testimony during that time. It was so bad that she considered it much longer. Her husband had been detained twice for three months and then for six months. He was beaten during that second detention. He was already in hiding when she left the country. And then her brother was detained for what sounds like three months. The only change that happened after she arrived in the country of significance is that she lost contact with and apparently her husband therefore disappeared. Do you think that was a materiality? What's the government's view on this? I got to tell you that I don't know what to make of the IJ's decision. I think the BIA's decision probably comes a little closer to making a materiality type finding, although it mashes the extraordinary circumstances and change circumstances together just a little bit. So is the government's view that this is like a materiality finding? Or what exactly is going on here? It is that it's a materiality you're finding, Your Honor. I'd say I rarely find a decision that I defend on appeal where it couldn't have been written more pristinely and clearly. But I think, again, the context of that full paragraph of which you read a key closing sentence bears that out. The key point is the facts that the IJ discounted at length was summed up when the IJ said, look, before coming to the United States, petitioner or her husband or brother had faced all of these bad things. There was the disappearance, but it really wasn't something that was so new and different that it, as in the words of the IJ, that might constitute a change in circumstances that's cognizable. I think what the immigration judge is getting at there is materiality. Some other features of the opinion bear that out. Earlier in the opinion on administrative record at page 54, which is also addendum 4, my apologies, administrative record 58, which is addendum 8, the court emphasizes the significance of the credibility issue as to when the petitioner's husband disappeared. The only way that that sort of ends up being important is to kind of a factual determination about that key fact, how that kind of shakes out in the materiality analysis. Otherwise, the opinion doesn't really, you know, that's the only place that that really kind of gets salience as to the factual weighing of whether there was a material change in circumstances. I'd also add that, you know, a good way to contrast these from a lot of the cases that get prominence in the briefing here is the rule you sort of emerge with that some other circuits have adopted, is that you can't adopt a categorical rule that you don't have materiality when somebody's, you know, petition, you know, faces certain, you know, circumstances that are, you know, similar in kind, but they substantially increase the strength of a claim. You know, Vahora, Mandevu, Fakhri Singh, you know, these are sort of of these kind. There's some new big event that's significantly weightier, you know, in Fakhri, for example, before you get into the specific cases in that vein, if it's a materiality type finding, then Gormukh controls. I mean, I don't know if there's any question about that, because that's precisely what that case dealt with. What if what if opposing counsel's right? What if what this what the immigration judge and the BIA combining the two really said was little, you know, change circumstances that just just exacerbate existing fears, just categorically, as a matter of law, do not count. We don't consider those in an asylum application, and therefore you cannot get relief under the change circumstances exception. Would that would that then be a legal conclusion that we would have jurisdiction to or predicate in this case is true? Your Honor, I think I would push back on that. And I think here's I think, as you, Your Honor said before, said, you know, even if, you know, even if we acknowledge that there is some sort of legal determination baked into what happened here, it's hard to get away from that factual element here. And then you still kind of would have a mixed question of law and fact. And I don't think that this circuit has gone as far as, say, the Ninth Circuit, for example, in its willingness to kind of dive into mixed questions of law and fact, which, you know, as exhibited by some of the Ninth Circuit's opinion, really does not, you know, ends up in just kind of a reweighing of all the facts at the end of the day. You know, what ends up happening in a number of these Ninth Circuit cases is, you know, you have a very cursory jurisdictional finding, and then the Ninth Circuit goes on to kind of weigh and delve in deeply as to whether, you know, as a matter of, you know, as a matter of kind of what it's going to hold, there have been, you know, material change circumstances. So I think I'd push back and it's very hard to divorce, make this a purely legal determination. And I think the court doesn't need to reach that issue here and doesn't need to quite go that far, because you have here both legally and factually something that I think is a materiality issue. The other thing I'd add, and it is, I mean, just not to interrupt you, but this is a slippery slope both ways. You realize that because there's very few just purely legal issues. I mean, just divorce from the facts, right? We apply law to facts. And so one of the problems you run into is every legal question has facts, and every set of facts are going to be used in a legal question. So I don't know how to figure out, you know, at what point that, or where to draw that line, I guess, is my point. It cannot be the case that we have no jurisdiction to review anything, and I can't think of a purely legal issue. So is the government really arguing that we don't have jurisdiction to review anything? No, Your Honor. I think, you know, the Munoz-Yepes case is one example. You know, the court concluded with pretty good ease that it had jurisdiction to review the meaning of admission in the Immigration and Nationality Act. It had immigration to review a due process claim that would presumably enter the constitutional claims prong, naturally. It had jurisdiction to review the scope of certain statutory relief. The pure questions of law, I think there will certainly be, you know, some hard questions at the margin, but I think the pure questions of law, the better the court is able to just tether to that is the most faithful way to, you know, go about and just give the full effect to the real IDX text. I do acknowledge that there could be, you know, there can be some close questions, but I think those close questions start to come when the court starts going down the road of inviting review of mixed questions of law where the facts are maybe undisputed, but, you know, the court pretty soon finds itself in a weighing, and the better the court hews to a pure questions of law approach, which I think the Seventh Circuit, for example, hews pretty closely to, the kind of more administrable and faithful to the real ID Act things will be. And the risk is if you go with the Ninth Circuit's approach, then you're reviewing everything. I mean, almost everything anyhow. There's pretty broad review in the Ninth Circuit, Your Honor. That's right. Going back to just how the court can kind of decide, you know, decide this case in a narrow way, you know, consistently with kind of the other cases cited in the opposite authorities. Many of those cases, again, go to, you know, Fakhri goes from a situation, you know, it sort of highlighted, you know, somebody who has a weak or non-existent claim and goes to, you know, a plausible claim. Other cases like Vahora and Singh go from, talk about change circumstances that make somebody's application for asylum substantially stronger. Um, Mandevu in the Sixth Circuit, you know, similar thing. Uh, Gee, which is a Second Circuit case cited, cited by my friend on the other side, uh, gets what he says, you know, you can't sort of artificially limit the change circumstances you look at, you know, the joining of a political party isn't the only relevant thing, you know, highly publicized political activities are a big deal. The difference with all those cases is, you know, you don't, you don't have a situation here where the claim was sort of, you know, weak or non-existent or, you know, maybe decent. And then it went from selling substantially stronger, whatever claim, uh, the petitioner here had, she really had when she entered the United States that the additional disappearance of her husband was not a material change. It was not much of a difference. You know, there were all those things that I already listed before. And I think this is, this goes back to what I said earlier about things in the immigration judge's opinion that sort of bear out that this was a factual determination. The immigration judge quite readily granted withholding of removal in this case, despite there being, you know, a high standard for that. And the court did so, you know, by focusing on, you know, quite specifically on the female genital mutilation side of things. And it didn't even need to get into, uh, you know, a good number of other features that, you know, were, were set forth to, to support the claim for relief. So when you look at that, when you look at the emphasis on credibility, um, regarding respondents testimony and her husband's disappearance, what you come down to, I think is a situation where unlike all of these other cases where you have big events intervening, you know, in FACRI, you have, you know, a collapse of a peace agreement in Senegal. Um, you have an intervening election in Mandebu and so on and so forth. Here you have just a substantially similar, um, additional fact, much like the court confronted in Goremu. Um, and you have a situation where it is a discretionary factual determination made by the immigration judge under which according to this court's precedent and, uh, as properly interpreting the Real ID Act, this court lacks jurisdiction to review. Uh, if there are no further questions, Your Honor, I would ask the court to deny the case. Just a couple of quick points. Um, in rebuttal, um, my colleague, uh, pointed to the Munoz-Yapes case, um, for interpretation of a statutory term. Um, this case is essentially the same. The issue is to change circumstances, exception that's a statutory issue. Um, just as, um, some of the other cases that were cited there where we talked about the, the definition of statutory term admission, um, in, I believe it was Corrado, um, the same issue here applies. The interpretation of a statutory term or a statutory section, um, is pure question of law, just like it was in Munoz-Yapes and the other cases that, uh, that were cited in Petitioner's Brief. I was going to ask you to, um, in the BIA, uh, decision, one of the things that I know they, they mix and match here, they, they, um, they also have some confusion between the two different exceptions. Um, but there's a line that says immigration judge found that the respondent experienced past persecution in Ethiopia. Her husband and brother were also harmed and she was not prevented from filing an asylum application within one year of her entry into the United States. Now, you may say that really gets at extraordinary circumstances, but then the next sentence also talks about changed circumstances and talks about did not establish changed or extraordinary circumstances, which indicates that that finding might be relevant for both. And so my question for you is this, which it appears that what the, what the BIA at least is saying is she could have filed within a year for all of the reasons you just stated, the, the genital mutilation, et cetera. She didn't do it. Nothing really all of all that significant has happened since then. And so therefore we're not going to excuse her failure to file. And it uses this term under either the changed or extraordinary circumstances exception. What do we do with that? Uh, it's, it's a bit of a mess to be frank. Um, typically when we talk about preventing someone from filing, that's an extraordinary circumstance. Um, and so the, I think part of the reason why the board used exchanged and extraordinary there is because at the board appeal level petitioner raised to change circumstances as the, as the essential we didn't, that was not, uh, the extraordinary circumstances exception was not listed in the, in the, uh, board level appeal at all. Um, and I, so I don't know if it was a copy and paste problem, um, or if they just decided to kind of throw it out there to cover all potential bases. Um, but I, I don't think that the criteria that they discussed there is particularly relevant to the change circumstances issue because it typically impacts the extraordinary. But if she, but if she was able to file within a year, I mean, do you agree that the G the general mutilation and the other facts she had available to her the first year, first couple of years would have at least given rise to a colorable asylum application? I would your honor the, I, this is of course a pro bono case for me. It's not my primary area of practice. One thing that I have learned though, in my short time is that nothing surprises me anymore when it comes to immigration judge decisions and board decisions. Things that are very clear, it appeared to me to be very clear, uh, oftentimes art. And one thing to keep in mind, this is a, um, I believe she's 62 now, a year old woman who's illiterate, doesn't speak any English at all. Um, I would be hesitant to expect her to have a good understanding of the ins and outs of immigration law. I completely agree and completely understand. I just make the point that if she could have filed early on, was it impermissible for the BIA in particular to say, well, nothing all that significant happened. Um, certainly compared to the initial grounds and therefore we're going to deny under the change circumstances exception. I would say that that's it to the extent that they either expressly or impliedly, uh, viewed that as the appropriate analysis. I would say that's wrong. Some of the cases that we've cited, um, that my colleague mentioned, um, mandibu, uh, she, some of the other cases deal with situations where the board or the immigration judge seems to think, well, there, the application point prior was, um, she would have won if she had filed on time and she didn't. Therefore they changed circumstances don't apply. Um, and the courts have rejected that as an appropriate, um, way to analyze the case. Um, just very quickly in my last 15 seconds, um, position not asking for a ninth circuit scope here. Um, the, all we're asking is that the legal standard be clarified and that the case be remanded back to the immigration judge for reconsideration under the appropriate standard. Thank you very much. Thank you. Uh, we thank the parties for their argument and their briefing and the case is now submitted.